## H. WARSHOW & SONS, INC.

ARBITRATION: Any controversy or claim arising out of or relating to this contract, any interpretation thereof, or breach hereof, should be settled by arbitration in the city of New York before the American Arbitration Association under the rules of the General Arbitration Council of the Textile Industry then obtaining. The parties consent to the jurisdiction of the Supreme Court of the state of New York, or any other court of proper jurisdiction for all purposes including enforcement of the arbitration agreement and entry of any judgment on any award, and further consent that any purpose of notice in connection with the arbitration proceeding, may be served within or without the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed.

"There are no warranties express or implied of merchantability of the merchandise delivered hereunder or its fitness for a particular purpose or otherwise, except that the Seller warrants that the merchandise delivered hereunder shall conform with the description thereof on the face of this contract." The Seller does not guarantee the exact matching of color, shade, resistance to light or water, or suitability for further processing. The Seller shall not be liable for defects, imperfections or variations from specifications in the merchandise that are within customary trade tolerance published from time to time by the Northern Textile Association and the Buyer must accept merchandise within such tolerances.

Unless otherwise specified herein, all deliveries are F.O.B. mill. The placing of the goods in the possession of a carrier shall constitute delivery. "Upon delivery of the merchandise as provided herein, the title to and risk of loss of such merchandise shall pass to the Buyer and the Buyer's risk of loss shall not be altered by the conduct of either party hereto or as a result of the breach of this contract or otherwise." "If merchandise identified to this contract is held or set aside in accordance with the Buyer's instructions, or if no shipping instructions have been supplied by the Buyer with respect thereto, the placing of an invoice in the mail with respect to such merchandise to the Buyer, and title and risk of loss thereto shall thereupon pass to the Buyer." Delivery of any installment of the merchandise covered hereunder by the 15th day after the date specified therefore shall constitute a timely delivery. Delivery of a quantity of the merchandise or an installment thereof which does not vary by more than 10% from the quantity of the merchandise or installment specified shall constitute full performance of such delivery and the Buyer shall not have the right to reject any such deliveries on the basis of a quantity shortfall.

No liability shall result from delay in performance or non-performance caused, directly or indirectly, by circumstances beyond the control of the Seller, including, but not limited to acts of God, fire, flood, war, government action, accident, labor trouble or shortage, inability to obtain material, equipment or transportation. Quantities so affected may be eliminated by Seller from the order without liability, but the order shall remain otherwise unaffected.

If the Buyer does not select colorings, designs or patterns, furnish assortments or complete specifications within the time specified, the Seller may invoice the Buyer for the Greige goods and the Buyer agrees to make payment of same. If the Seller permits the Buyer to complete assortments or specifications subsequent to the time specified, the Seller may delay delivery an equal time.

In no event shall the Seller be liable for incidental, indirect or consequential damages arising from any breach, but in the event of any breach, including but not limited to breach of warranty, the Buyer shall be limited, as his sole and exclusive remedy, to the difference between the contract price and the market price for the same or similar goods at the time of such breach. Buyer's failure to give notice of any breach to the Seller within seven (7) days from the date of receipt of the goods shall constitute waiver by the Buyer of all claims in respect of goods delivered hereunder. Any claim asserted by the Buyer that the merchandise is not in accordance with the contract or with respect to the quality of the merchandise shall be barred unless the Buyer promptly affords the Seller the opportunity to inspect, examine, sample and test such merchandise. In any event, whether or not the time for notice of breach has expired, after the goods have been cut or otherwise processed unchanged - from their original condition by the Buyer, or on his behalf, the Buyer shall be deemed to have irrevocably accepted the goods and to have waived any claim with respect thereto.

a) This order is subject to limit of credit determinable at any time by the Seller. The Seller may, in its sole discretion at any time, limit or cancel the credit of the Buyer as to time and amount and may demand payment in cash before manufacture or delivery of any part of the goods. The failure of the Buyer promptly to make any such payment after demand in writing shall constitute a default hereunder. Any payment received from the Buyer may, in the sole discretion of the Seller, be applied by the Seller against any obligation owing to the Seller by the Buyer under this or any other contract, and such application shall not discharge the Buyer's liability for any additional amounts owing to the Seller by the Buyer and the Buyer shall remain liable for all amounts due hereunder if such payment is applied to satisfy an obligation under another contract. The Seller's acceptance of any such payment shall not constitute a waiver of the Seller's right to pursue collection of any remaining balance.

b) If the Buyer is in default in payment or otherwise in any respect on this or any other order, the Seller may, at its option, do any one of the following: defer shipment until such default is removed, cancel any undelivered portion of this or other orders, and/or demand payment of all outstanding bills of the Buyer, and upon such demand, such bills shall become due and payable immediately. If the Seller defers shipment because of the Buyer's default, the Buyer agrees to accept and pay for the deferred shipments even though deliveries are rendered after the time of delivery specified herein has expired. If deliveries are to be made at or are made in installments, a default by the Buyer with respect to any one or more installments may, at the option of the Seller, be deemed a default of the entire contract. Any rights of the Seller, including but not limited to the right to recover damages against the Buyer by reason of the Buyer's breach of this Agreement, shall survive any cancellation by the Seller pursuant to the provisions of this paragraph 8, and the foregoing provisions of this paragraph 8 shall not in any manner limit any rights or remedies available to the Seller by law. "The right to finish or leave in greige all merchandise ordered by the Buyer at the Buyer's sole risk and expense and to bill any merchandise contracted for (whatever finished or in greige) at the contract price which shall be payable in full prior to delivery of such merchandise according to the terms and conditions hereof, the right to recover the contract price for any merchandise tendered, the right to cancel this contract, the right to stop and repossess any of the merchandise in transit (at the Buyer's sole cost and expense) and the right to sell all or any part of the merchandise (whether finished or in greige) at one or more public or private sales (which shall be conducted at the Buyer's sole cost and expense) for such consideration, for cash or credit and on such terms as Seller determines, the Buyer being liable for all losses, expenses and damages (including the contract price of the merchandise) incurred by the Seller as a result of such default. All rights and remedies of the Seller for the Buyer's breach hereof shall be cumulative and in addition to any other rights and remedies available to the Seller under law".

The price of the undelivered portion of this order is subject to change as a result of restrictions or regulations imposed under any agreements, codes, or licenses made or issued pursuant to federal or state legislation.

Unless otherwise expressly provided herein, deliveries may be made in installments, and each installment shall constitute a separate sale and any installment of goods or part thereof so delivered shall be paid for in accordance with the terms of this contract regardless of claims by the Buyer relating to any delivered or undelivered goods, whether under this or any other contract. Each style ordered herein shall be deemed the subject of a separate contract and matters affecting any style shall not affect the contract with respect to others. If any part of the goods is not delivered by the Seller or is not in accordance with the order, the order with respect to the remainder of the goods shall continue and shall be enforceable and unaffected thereby.

The Buyer shall pay any taxes imposed by law upon or on account of the goods delivered hereunder.

The Buyer shall pay interest at the then prevailing rate commencing on the date when payment is due under any invoice covering goods delivered pursuant hereto, with respect to any payments not made when due, and, in addition, the Buyer shall pay reasonable attorneys' fees if any claim pursuant hereto is referred to an attorney for collection. Payment shall be made in funds bankable in New York or at a place of collection by the Seller.

The right of the Buyer to receive the goods to which this order pertains, is not assignable not transferrable by the Buyer, in whole or in part, without the prior written consent of the Seller. "No rights in or licenses to any patterns, designs, trademarks or copyrights of, in or affixed to merchandise delivered or agreed to be delivered hereunder (or its packaging) shall pass to the Buyer and the Buyer agrees not to reproduce or simulate or cause or allow to be reproduced or simulated either directly or indirectly, any such patterns, designs, trade names, trademarks or copyrights. The Seller shall be entitled to all forms of injunctive relief granted by any court of competent jurisdiction for enforcement of the foregoing restrictions without the need to first pursue such injunctive relief, before the American Arbitration Association." The Seller may freely assign his rights hereunder without the Buyer's right to obtain assurances from any such delegate.

None of the terms and conditions contained in this order may be added to, modified, superseded or otherwise altered except by a written instrument signed by the Seller and delivered by the Seller to the Buyer, and each delivery of goods by the Seller to the Buyer shall be deemed to be only upon the terms and conditions contained herein, notwithstanding any terms and conditions that may be contained in any order or other form of the Buyer and not withstanding the Seller's act of delivering or receiving payment for the delivery or any conduct of the parties. Any waiver by Buyer or Seller of a default by the other shall be confined to the specific instance and shall not vary or amend the agreement.

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

H. Warshow & Sons, Inc., Claimant,

- and -

13 181 00735 07

Roka Apparel Products, LLC, Respondent.

_____/

## MOTION TO QUASH DEMAND FOR ARBITRATION

Roka Apparel Products, LLC ("Roka") named as the "respondent" in this proceeding, by and through its undersigned counsel, hereby makes a limited special appearance solely for the purpose of challenging the jurisdiction of the American Arbitration Association ("AAA") to hear this dispute. By filing this motion, Roka does not voluntarily submit to the jurisdiction of this body, nor does Roka waive its rights to have this dispute resolved in a court of proper jurisdiction where Roka retains its valuable rights, including the right to a jury trial. In support of this motion, Roka states:

1. Roka is a manufacturer of women's undergarments and swimwear. At all relevant times, Roka's manufacturing business has been conducted outside the United States, in Honduras, where Roka's manufacturing facility is located. The address of that facility is Hamlet Manufacturing #2, Cutting Department (ROKA), Zoli Parque Ind Villanueva #17, Villanueva-C Honduras. Roka has during the relevant time also maintained an administrative office in Jacksonville, Florida. Roka is registered to do business in Florida and has a designated agent for service of process in Florida. Roka has not maintained any office or facility in New York and, should this matter not be promptly

terminated, reserves its right to object to the locale hearing requested by the Claimant which is in New York, N.Y.

2. Roka has from time to time ordered and received goods shipped through Florida to its manufacturing facility in Honduras from the Claimant, Warshow & Sons, Inc. ("Warshow"). A dispute has arisen between Roka and Warshow involving alleged payments due from Roka for certain goods shipped by Warshow (the "Dispute").

3. Roka and Warshow have been engaged in efforts to mutually resolve the Dispute for several months. At no time during these efforts did Warshow ever claim to have the right to arbitrate the Dispute, nor did it ever inform Roka that it believed such a right existed. Roka was therefore shocked to receive the demand for arbitration, particularly since it has never entered into any agreement with Warshow consenting to arbitrate this Dispute with the AAA. Nor has Roka ever entered any agreement with Warshow whatsoever evidencing an intent to arbitrate this Dispute or any other matter involving Warshow in New York, N.Y.

4. It is hornbook law that there must be a valid written agreement to arbitrate a dispute before a matter can be properly submitted to, and determined by, an arbitral body. The AAA's Commercial Rules, specifically, R-7. entitled "Jurisdiction" recognize this fundamental premise. R-7 provides in relevant part that: "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." While this provision appears to conflict with the law in many jurisdictions, including Florida, which maintains that it is the trial court which has the jurisdiction to determine the existence of a valid written agreement to arbitrate or the existence of an arbitrable issue, Roka believes that

2

the AAA's jurisdiction over this demand for arbitration is so wholly unsupported, that it should be dismissed forthwith, leaving the parties to their judicial or other remedies to resolve this Dispute.

5. The only document on which Warshow predicates its demand to arbitrate this Dispute does not support the AAA's exercise of jurisdiction over Roka. All that Warshow has provided with its demand for arbitration is one side of an unidentified pre-printed form which contains boilerplate arbitration language. Moreover, Warshow's name is affixed to this page of the unidentified pre-printed form with a stamp. Warshow's name is not incorporated anywhere in the printed language of the form. Nor is there any reference whatsoever to Roka. A copy of this unidentified document is attached here as Exhibit A.

6. Simply put, in the absence of a written agreement to arbitrate, the Dispute between Warshow and Roka may not be determined in this or any other arbitral forum.

7. Under these circumstances, Roka respectfully submits that this body is clearly without jurisdiction to hear or determine the Dispute and should quash Warshow's demand for arbitration and dismiss it forthwith.

By: _____
BARBARA SLOTT PEGG

Florida Bar No. 275352
New York Bar No. 2140468
316 Sea Moss Lane, Suite 3
Ponte Vedra Beach, Florida 32082
Telephone No. (904) 285-8100
Facsimile No. (904) 285-8890

ATTORNEY FOR ROKA APPAREL PRODUCTS, LLC

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Peter B. Foster, Foster & Wolkind, P.C., 80 Fifth Avenue, Suite 1401, New York, N.Y. 10011 and to American Arbitration Association, Lisa M. Bellegarde, Case Manager by facsimile to 212/691-2459 on April 20, 2007.

_____
Barbara Slott Pegg

4

H WARSHOW & SONS, INC.

ARBITRATION: Any controversy or claim arising out of or relating to this contract, any interpretation thereof, or breach hereof, should be settled by arbitration in the city of New York before the American Arbitration Association under the rules of the General Arbitration Council of the Textile Industry then obtaining. The parties consent to the jurisdiction of the Supreme Court of the state of New York, or any other court of proper jurisdiction, for all purposes including enforcement of the arbitration agreement and entry of any judgment on any award, and further consent that any purpose or notice in connection with the arbitration proceeding, may be served within or without the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed.

"There are no warranties express or implied of merchantability of the merchandise delivered hereunder or its fitness for a particular purpose or otherwise, except that the Seller warrants that the merchandise delivered hereunder shall conform with the description thereof on the face of this contract." The Seller does not guarantee the exact matching of color, shade, resistance to light or water, or suitability for further processing. The Seller shall not be liable for defects, imperfections or variations from specifications in the merchandise that are within customary trade tolerance published from time to time by the Northern Textile Association and the Buyer must accept merchandise within such tolerances.

Unless otherwise specified herein, all deliveries are F.O.B. mill. The placing of the goods in the possession of a carrier shall constitute delivery. "Upon delivery of the merchandise as provided herein, the title to and risk of loss of such merchandise shall pass to the Buyer and the Buyer's risk of loss shall not be altered by the conduct of either party hereto or as a result of the breach of this contract, or otherwise." If merchandise identified to this contract is held or set aside in accordance with the Buyer's instructions, or if no shipping instructions have been supplied by the Buyer with respect thereto, the placing of an invoice in the mail with respect to such merchandise to the Buyer, and title and risk of loss thereto shall thereupon pass to the Buyer." Delivery of any installment of the merchandise covered hereunder by the 15th day after the date specified therefore shall constitute a timely delivery. Delivery of a quantity of the merchandise or an installment thereof which does not vary by more than 10% from the quantity of the merchandise or installment specified shall constitute full performance of such delivery and the Buyer shall not have the right to reject any such deliveries on the basis of a quantity shortfall.

No liability shall result from delay in performance or non-performance caused, directly or indirectly, by circumstances beyond the control of the Seller, including, but not limited to, acts of God, fire, flood, war, government action, accident, labor trouble or shortage, inability to obtain material, equipment or transportation. Quantities so affected may be eliminated by Seller from the order without liability, but the order shall remain otherwise unaffected.

CUSTOM: If the Buyer does not submit colorings, designs or patterns, furnish assortments or complete specifications within the time specified, the Seller may invoice the Buyer for the Greige goods and the Buyer agrees to make payment of same. If the Seller permits the Buyer to complete assortments or specifications subsequent to the time specified, the Seller may delay delivery an equal time.

In no event shall the Seller be liable for incidental, indirect or consequential damages arising from any breach, but in the event of any breach, including but not limited to breach of warranty, the Buyer shall be limited, as his sole and exclusive remedy, to the difference between the contract price and the market price for the same or similar goods at the time of such breach. Buyer's failure to give notice of any breach to the Seller within seven (7) days from the date of receipt of the goods shall constitute waiver by the Buyer of all claims in respect of goods delivered hereunder. Any claim asserted by the Buyer that the merchandise is not in accordance with the contract or with respect to the quality of the merchandise shall be barred unless the Buyer promptly affords the Seller the opportunity to inspect, examine, sample and test such merchandise. In any event, whether or not the time for notice of breach has expired, after the goods have been cut or otherwise processed unchanged - from their original condition by the Buyer, or on his behalf, the Buyer shall be deemed to have irrevocably accepted the goods and to have waived any claim with respect thereto.

a) This order is subject to limit of credit determinable at any time by the Seller. The Seller may, in its sole discretion at any time, limit or cancel the credit of the Buyer as to time and amount and may demand payment in cash before manufacture or delivery of any part of the goods. The failure of the Buyer promptly to make any such payment after demand in writing shall constitute a default hereunder. Any payment received from the Buyer may, in the sole discretion of the Seller, be applied by the Seller against any obligation owing to the Seller by the Buyer under this or any other contract, and such application shall not discharge the Buyer's liability for any additional amounts owing to the Seller by the Buyer and the Buyer shall remain liable for all amounts due hereunder if such payment is applied to satisfy an obligation under another contract. The Seller's acceptance of any such payment shall not constitute a waiver of the Seller's right to pursue collection of any remaining balance.

b) If the Buyer is in default in payment or otherwise in any respect on this or any other order, the Seller may, at its option, do any one of the following: defer shipment until such default is removed, cancel any undelivered portion of this or other orders, and/or demand payment of all outstanding bills of the Buyer, and upon such demand, such bills shall become due and payable immediately. If the Seller defers shipment because of the Buyer's default, the Buyer agrees to accept and pay for the deferred shipments even though deliveries are rendered after the time of delivery specified herein has expired. If deliveries are to be made or are made in installments, a default by the Buyer with respect to any one or more installments may, at the option of the Seller, be deemed a default of the entire contract. Any rights of the Seller, including but limited to the right to recover damages against the Buyer by reason of the Buyer's breach of this Agreement, shall survive any cancellation by the Seller pursuant to the provisions of this paragraph 8, and the foregoing provisions of this paragraph 8 shall not in any manner limit any rights or remedies available to the Seller by law. "The right to finish or leave in greige all merchandise ordered by the Buyer at the Buyer's sole risk and expense and to bill any merchandise contracted for (whether finished or in greige) at the contract price which shall be payable in full prior to delivery of such merchandise according to the terms and conditions hereof, the right to recover the contract price for any merchandise tendered, the right to cancel this contract, the right to stop and repossess any of the merchandise in transit (at the Buyer's sole cost and expense) and the right to sell all or any part of the merchandise (whether finished or in greige) at one or more public or private sales (which shall be conducted at the Buyer's sole cost and expense) for such consideration, for cash or credit and on such terms as Seller determines, the Buyer being liable for all losses, expenses and damages (including the contract price of the merchandise) incurred by the Seller as a result of such default. All rights and remedies of the Seller for the Buyer's breach hereof shall be cumulative and in addition to any other rights and remedies available to the Seller under law".

) The price of the undelivered portion of this order is subject to change as a result of restrictions or regulations imposed under any agreements, codes, or licenses made or issued pursuant to federal or state legislation.

) Unless otherwise expressly provided herein, deliveries may be made in installments, and each installment shall constitute a separate sale and any installment of goods or part thereof so delivered shall be paid for in accordance with the terms of this contract regardless of claims by the Buyer relating to any delivered or undelivered goods, whether under this or any other contract. Each style ordered herein shall be deemed the subject of a separate contract and matters affecting any style shall not affect the contract with respect to others. If any part of the goods is not delivered by the Seller or is not in accordance with the order, the order with respect to the remainder of the goods shall continue and shall be enforceable and unaffected thereby.

) The Buyer shall pay any taxes imposed by law upon or on account of the goods delivered hereunder.

) The Buyer shall pay interest at the then prevailing rate commencing on the date when payment is due under any invoice covering goods delivered pursuant hereto, with respect to any payments not made when due, and, in addition, the Buyer shall pay reasonable attorneys' fees if any claim pursuant hereto is referred to an attorney for collection. Payment shall be made in funds bankable in New York or at a place of collection by the Seller.

) The right of the Buyer to receive the goods to which this order pertains, is not assignable not transferrable by the Buyer, in whole or in part, without the prior written consent of the Seller. "No rights in or licenses to any patterns, designs, trademarks or copyrights in, or affixed to merchandise delivered or agreed to be delivered hereunder (or its packaging) shall pass to the Buyer and the Buyer agrees not to reproduce or simulate or cause or allow to be reproduced or simulated either directly or indirectly, any such patterns, designs, trade names, trademarks or copyrights. The Seller shall be entitled to all forms of injunctive relief granted by any court of competent jurisdiction for enforcement of the foregoing restrictions without the need to first pursue such injunctive relief, before the American Arbitration Association." The Seller may freely assign his rights hereunder without the Buyer's right to obtain assurances from any such delegate.

) None of the terms and conditions contained in this order may be added to, modified, superseded or otherwise altered except by a written instrument signed by the Seller and delivered by the Seller to the Buyer, and each delivery of goods by the Seller to the Buyer shall be deemed to be only upon the terms and conditions contained herein, notwithstanding any terms and conditions that may be contained in any order or other form of the Buyer and not withstanding the Seller's act of delivering or receiving payment for any delivery or any conduct of the parties. Any waiver by Buyer or Seller of a default by the other shall be confined to the specific instance and shall not vary or affect the agreement.

EXHIBIT A

# EXHIBIT D

AMERICAN ARBITRATION ASSOCIATION
-----------------------------------------x
In the Matter of the Arbitration between
H. WARSHOW & SONS, INC.,

                     Claimant,

- against -

ROKA APPAREL PRODUCTS, LLC.,

                     Respondent.
-----------------------------------------x

Arb. No. 13 181 00735 07

**AFFIDAVIT IN OPPOSITION TO MOTION TO QUASH**

STATE OF NEW YORK  )
                             ) ss.:
COUNTY OF NEW YORK )

HENRY WARSHOW, being duly sworn, deposes and says:

1. I am the President and an employee of H. Warshow & Sons, Inc., the claimant in the above captioned matter, and in such capacity I have access to, and am one of the custodians of claimant's books, records and files, including the outstanding unpaid invoices which are subject of the within arbitration proceeding. The facts set forth in this affidavit are based upon both my personal knowledge, as well as my review and examination of claimant's books, records and files, including statements of account.

2. I am also over eighteen years of age, and I am fully familiar with all of the facts and proceedings heretofore had herein by reason of my personal involvement in the underlying events, and also by reason of my review of claimant's books, records and files, including the statements of account as aforesaid.

3. I make this affidavit in opposition to respondent's motion to quash claimant's demand for arbitration.

4. Respondents moving papers purport to make various arguments in order to avoid having the American Arbitration Association adjudicate the dispute which exists between the parties.

5. First, respondent seems to be implying that it has no presence in New York sufficient to subject itself to the jurisdiction of either the American Arbitration Association (hereinafter the "AAA") or the courts of the State of New York.

6. In support of this argument respondent advises the AAA that all of its manufacturing takes place in Honduras, that it has administrative offices in Florida, but that it has no offices in New York.

7. While these facts are interesting, respondent fails to mention the fact that it has been transacting business in New York State for years.

8. Specifically, upon information and belief, a substantial part of respondent's business consists of coming into New York State, meeting with vendors in New York State, placing orders in New York State, and buying textiles from vendors in New York State. Those textiles are in turn shipped to respondent's facility in Honduras where they are sewn and stitched into finished garments.

2