9. In addition, upon information and belief, a substantial part of respondent's business also consists of coming into New York State, meeting with its customers in New York State, selling finished garments to customers in New York State, and obtaining orders from customers in New York State.

10. Specifically, upon information and belief, respondent has:

   a) purchased textiles from the following New York companies:

   i) Milliken & Co. located at 1045 Sixth Avenue, New York, New York;

   ii) Darlington Fabrics Corporation located at 1407 Broadway, New York, New York; and

   iii) Elastic Fabrics of America, Inc. located at 1430 Broadway, New York, New York; and

   b) sold finished garments to the following New York companies:

   i) Maidenform located at 200 Madison Avenue, New York, New York, and ii) Warnaco located at 501 7 Avenue, New York, New York.

11. Even more important than the foregoing, many of the unpaid orders which are the subject of this arbitration were either initiated and/or placed by respondent

3

while its representative was physically present in New York visiting H. Warshow & Sons, Inc.'s New York office.

12. Specifically, respondent's President, Larry Stone, came to H. Warshow & Sons, Inc.'s New York office either to initiate or place orders on March 3, 2004, and again on April 6, 2004, and again on April 12, 2004, and again on November 2, 2004, and again on April 19, 2005.

13. In light of the foregoing, H. Warshow & Sons, Inc. respectfully submits that in addition to respondent repeatedly doing business within New York State in general, the transaction and underlying events which are the subject of this dispute also arose and took place in New York State.

14. Respondent's moving papers next argue that the dispute between the parties is not subject to arbitration because Roka alleges that it never consented to arbitration.

15. However, this argument by respondent simply not correct.

16. Respondent's moving papers conveniently fail to mention the fact that the page containing the arbitration provision which is the subject of this proceeding was a part of each and every order confirmation contract that was sent by H. Warshow & Sons, Inc. to respondent.

4

07/05/2007 12:28 9042858890 BARBARA SLOTT BEGG #0413 P.027 /031
05/08/07 TUE 12:08 FAX 212 69 2459 FOSTER & WOLKIND P.C. ☑005
May 04 07 04:06p p.8

Case 1:07-cv-04611-LLS    Document 8-4    Filed 07/05/2007    Page 3 of 7

17. Specifically, the arbitration provision appears on the reverse side of every order confirmation contract that was sent by claimant to respondent over the years, including the 60+ unpaid order confirmation contracts which are the subject of this arbitration. An exemplar of this order confirmation contract form is annexed hereto as Exhibit "A" and made a part hereof.

18. These 60 + order confirmation contracts, as well as the underlying textiles which are the subject of those order confirmation contract, were all received by respondent without objection, without any comment, and without any controverting document being sent back to H. Warshow & Sons, Inc.

19. It should be noted that in May of 2006 H. Warshow & Sons, Inc.'s insurance carrier was negotiating with respondent's attorneys to resolve the dispute between the parties. At that time, respondent acknowledged an indebtedness to H. Warshow & Sons, Inc. in the sum of $232, 583.93, and respondent's attorneys apparently offered to "waive the arbitration clause" and negotiate a settlement directly between the parties. See the letter dated May 12, 2006 from the H. Warshow & Sons, Inc.'s insurance carrier annexed hereto as Exhibit "B" and made a part hereof. Also see the fax from respondent to H. Warshow & Sons, Inc. dated July 25, 2006 acknowledging an indebtedness to H. Warshow & Sons, Inc. in the sum of $232,583.93, which is annexed hereto as Exhibit "C" and made a part hereof.

20. H. Warshow & Sons, Inc. respectfully submits that in light of i) the 60 + order confirmation contracts containing an arbitration clause sent to respondent and received

5

by respondent without objection, ii) respondent's apparent acknowledgment of the existence of the arbitration provision as evidenced by May 12, 2006 letter annexed hereto as Exhibit "B", and iii) the fact that arbitration is the customary method of settling disputes between merchants in the textile industry your deponent respectfully submits that respondent's position that it was unaware of the arbitration provision and taken by surprise by the commencement of the within proceeding is both untenable and incredible. Accordingly, the AAA should determine that respondent agreed to submit the within dispute for determination by the AAA.

WHEREFORE, it is respectfully requested that, and such other and further relief which this Court deems just and proper.

_____
HENRY WARSHOW

Sworn to before me this
4 day of May, 2007

_____

ANTHONY CARDILLO
Notary Public, State of New York
No. 034860234
Qualified in Bronx County
Commission Expires May 27, 2010

6

# EXHIBIT E

# H. WARSHOW & SONS, INC.

1375 BROADWAY, NEW YORK, N.Y. 10018
TEL (212) 921-9200 • FAX (212) 944-5704

DATE:

N.Y. ORDER #

please use above # for all inquiries

Customer Purchase Order #

SOLD TO:

SHIP TO:

ATT:

ATT:

| CUSTOMER ASSORTMENT PO # | | | | SALESMAN | |
|---|---|---|---|---|---|
| SELLING STYLE | FIBER CONTENT | | | TERMS | |
| | | | | ROUTING | |
| TOTAL YARDS | | | | | |

| WHITE PRICE: | COLOR PRICE: | PREMIUM PRICE | | FINISH CODE: | OVERRIDE: |
|---|---|---|---|---|---|
| Shipping Schedule | Week Ending | | | | Usage Code |
| | Yardage | | | | |
| Specification | | | Sequence | | Customer Code # |
| Shade # | Description | Yardage | | | |

Special Instructions:

1)* The undersigned hereby orders the merchandise described upon terms and conditions set forth herein and upon "PROVISIONS ON REVERSE SIDE WHICH ARE AN INTEGRAL PART OF THIS CONTRACT". This order shall become a contract for the entire quantity specified above either a) when signed and returned by Buyer to Seller and accepted in writing by Seller, or b) when Buyer receives and retains this contract (signed by Seller) without written objection for 10 days, or c) when Buyer accepts delivery of all or any part of the merchandise ordered hereunder, or d) when Buyer has given to Seller specifications or assortments, delivery or shipping instructions or instructions to bill and hold, or e) when Buyer has otherwise manifested assent to the terms and conditions hereof. This contract is the entire agreement between the parties hereto and supersedes any prior or contemporaneous oral or written agreements or communications between them...

H. WARSHOW & SONS, INC. (SELLER)   ACCEPTED (BUYER)

H. WARSHOW & SONS, INC.

2) ARBITRATION: Any controversy or claim arising out of or relating to this contract, any interpretation thereof, or breach hereof, should be settled by arbitration in the city of New York before the American Arbitration Association under the rules of the General Arbitration Council of the Textile Industry then obtaining. The parties consent to the jurisdiction of the Supreme Court of the state of New York, or any other court of proper jurisdiction for all purpose including enforcement of the arbitration agreement and entry of any judgment on any award, and further consent that any purpose of notice in connection with the arbitration proceeding, may be served within or without the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed.

3) There are no warranties express or implied of merchantability of the merchandise delivered hereunder or its fitness for a particular purpose or otherwise, except that the Seller warrants that the merchandise delivered hereunder shall conform with the description thereof on the face of this contract. The Seller does not guarantee the exact matching of color, shade, resistance to light or water, or suitability for further processing. The Seller shall not be liable for defects, imperfections or variations from specifications in the merchandise that are within customary trade tolerance published from time to time by the Northern Textile Association and the Buyer must accept merchandise within such tolerances.

4) Unless otherwise specified herein, all deliveries are F.O.B. mill. The placing of the goods in the possession of a carrier shall constitute delivery. "Upon delivery of the merchandise as provided herein, the title to and risk of loss of such merchandise shall pass to the Buyer and the Buyer's risk of loss shall not be altered by the conduct of either party hereto or as a result of the breach of this contract or otherwise." If merchandise identified to this contract is held or set aside in accordance with the Buyer's instructions, or if no shipping instructions have been supplied by the Buyer with respect thereto, the placing of an invoice in the mail with respect to such merchandise to the Buyer, and title and risk of loss thereto shall thereupon pass to the Buyer." Delivery of any installment of the merchandise covered hereunder by the 15th day after the date specified therefore shall constitute a timely delivery. Delivery of a quantity of the merchandise or an installment thereof which does not vary by more than 10% from the quantity of the merchandise or installment specified shall constitute full performance of such delivery and the Buyer shall not have the right to reject any such deliveries on the basis of a quantity shortfall.

5) No liability shall result from delay in performance or non-performance caused, directly or indirectly, by circumstances beyond the control of the Seller, including, but not limited to acts of God, fire, flood, war, government action, accident, labor trouble or shortage, inability to obtain material, equipment or transportation. Quantities so affected may be eliminated by Seller from the order without liability, but the order shall remain otherwise unaffected.

6) If the Buyer does not select colorings, designs or patterns, furnish assortments or complete specifications within the time specified, the Seller may invoice the Buyer for the Greige goods and the Buyer agrees to make payment of same. If the Seller permits the Buyer to complete assortments or specifications subsequent to the time specified, the Seller may delay delivery an equal time.

7) In no event shall the Seller be liable for incidental, indirect or consequential damages arising from any breach, but in the event of any breach, including but not limited to breach of warranty, the Buyer shall be limited, as his sole and exclusive remedy, to the difference between the contract price and the market price for the same or similar goods at the time of such breach. Buyer's failure to give notice of any breach to the Seller within seven (7) days from the date of receipt of the goods shall constitute waiver by the Buyer of all claims in respect of goods delivered hereunder. Any claim asserted by the Buyer that the merchandise is not in accordance with the contract or with respect to the quality of the merchandise shall be barred unless the Buyer promptly affords the Seller the opportunity to inspect, examine, sample and test such merchandise. In any event, whether or not the time for notice of breach has expired, after the goods have been cut or otherwise processed unchanged from their original condition by the Buyer, or on his behalf, the Buyer shall be deemed to have irrevocably accepted the goods and to have waived any claim with respect thereto.

8) a) This order is subject to limit of credit determinable at any time by the Seller. The Seller may, in its sole discretion at any time, limit or cancel the credit of the Buyer as to time and amount and may demand payment in cash before manufacture or delivery of any part of the goods. The failure of the Buyer promptly to make any such payment after demand in writing shall constitute a default hereunder. Any payment received from the Buyer may, in the sole discretion of the Seller, be applied by the Seller against any obligation owing to the Seller by the Buyer under this or any other contract, and such application shall not discharge the Buyer's liability for any additional amounts owing to the Seller by the Buyer and the Buyer shall remain liable for all amounts due hereunder if such payment is applied to satisfy an obligation under another contract. The Seller's acceptance of any such payment shall not constitute a waiver of the Seller's right to pursue collection of any remaining balance.

b) If the Buyer is in default in payment or otherwise in any respect on this or any other order, the Seller may, at its option, do any one of the following: defer shipment until such default is removed, cancel any undelivered portion of this or other orders, and/or demand payment of all outstanding bills of the Buyer and upon such demand, such bills shall become due and payable immediately. If the Seller defers shipment because of the Buyer's default, the Buyer agrees to accept and pay for the deferred shipments even though deliveries are rendered after the time of delivery specified herein has expired. If deliveries are to be made or are made in installments, a default by the Buyer with respect to any one or more installments shall be, at the option of the Seller, be deemed a default of the entire contract. Any rights of the Seller, including but not limited to the right to recover damages against the Buyer by reason of the Buyer's breach of this Agreement, shall survive any cancellation by the Seller pursuant to the provisions of this paragraph 8, and the foregoing provisions of this paragraph 8 shall not in any manner limit any rights or remedies available to the Seller by law. The right to finish or leave in greige all merchandise ordered by the Buyer at the Buyer's sole risk and expense and to bill any merchandise contracted for (whatever finished or in greige) at the contract price which shall be payable in full prior to delivery of such merchandise according to the terms and conditions hereof, the right to recover the contract price for any merchandise tendered, the right to cancel this contract, the right to stop and repossess any of the merchandise in transit (at the Buyer's sole cost and expense) and the right to sell all or any part of the merchandise (whether finished or in greige) at one or more public or private sales (which shall be conducted at the Buyer's sole cost and expense) for such consideration, for cash or credit and on such terms as Seller determines, the Buyer being liable for all losses, expenses and damages (including the contract price of the merchandise) incurred by the Seller as a result of such default. All rights and remedies of the Seller for the Buyer's breach hereof shall be cumulative and in addition to any other rights and remedies available to the Seller under law.

9) The price of the undelivered portion of this order is subject to change as a result of restrictions or regulations imposed under any agreements, codes, or licenses made or issued pursuant to federal or state legislation.

10) Unless otherwise expressly provided herein, deliveries may be made in installments, and each installment shall constitute a separate sale and any installment of goods or part thereof so delivered shall be paid for in accordance with the terms of this contract regardless of claims by the Buyer relating to any delivered or undelivered goods, whether under this or any other contract. Each style ordered herein shall be deemed the subject of a separate contract and matters affecting any style shall not affect the contract with respect to others. If any part of the goods is not delivered by the Seller or is not in accordance with the order, the order with respect to the remainder of the goods shall continue and shall be enforceable and unaffected thereby.

11) The Buyer shall pay any taxes imposed by law upon or on account of the goods delivered hereunder.

12) The Buyer shall pay interest at the then prevailing rate commencing on the date when payment is due under any invoice covering goods delivered pursuant hereto, with respect to any payments not made when due, and, in addition, the Buyer shall pay reasonable attorneys' fees if any claim pursuant hereto is referred to an attorney for collection. Payment shall be made in funds bankable in New York or at a place of collection by the Seller.

13) The right of the Buyer to receive the goods to which this order pertains is not assignable nor transferable by the Buyer, in whole or in part, without the prior written consent of the Seller. No rights or licenses to any patterns, designs, trademarks or copyrights of, in or affixed to merchandise delivered or agreed to be delivered hereunder (or its packaging) shall pass to the Buyer and the Buyer agrees to reproduce or simulate or cause or allow to be reproduced or simulated either directly or indirectly, any such patterns, designs, trade names, trademarks or copyrights. The Seller shall be entitled to all forms of injunctive relief granted by any court of competent jurisdiction for enforcement of the foregoing restrictions without the need to first pursue such injunctive relief, before the American Arbitration Association. The Seller may freely assign its rights hereunder without the Buyer's right to obtain assurances from any such delegate.

14) None of the terms and conditions contained in this order may be added to, modified, superseded or otherwise altered except by a written instrument signed by the Seller and delivered by the Seller to the Buyer, and each delivery of goods by the Seller to the Buyer shall be deemed to be only upon the terms and conditions contained herein, notwithstanding any terms and conditions that may be contained in any order or other form of the Buyer and notwithstanding the Seller's act of delivering or receiving payment for the delivery or any conduct of the parties. Any waiver by Buyer or Seller of a default by the other shall be confined to the specific instance and shall not vary or amend the agreement.

BY: