# EXHIBIT E

AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

H. Warshow & Sons, Inc., Claimant,

     - and -

Roka Apparel Products, LLC, Respondent.

13 181 00735 07

_____/

## MOTION TO QUASH DEMAND FOR ARBITRATION

Roka Apparel Products, LLC ("Roka") named as the "respondent" in this proceeding, by and through its undersigned counsel, hereby makes a limited special appearance solely for the purpose of challenging the jurisdiction of the American Arbitration Association ("AAA") to hear this dispute. By filing this motion, Roka does not voluntarily submit to the jurisdiction of this body, nor does Roka waive its rights to have this dispute resolved in a court of proper jurisdiction where Roka retains its valuable rights, including the right to a jury trial. In support of this motion, Roka states:

1. Roka is a manufacturer of women's undergarments and swimwear. At all relevant times, Roka's manufacturing business has been conducted outside the United States, in Honduras, where Roka's manufacturing facility is located. The address of that facility is Hamlet Manufacturing #2, Cutting Department (ROKA), Zoli Parque Ind Villanueva #17, Villanueva-C Honduras. Roka has during the relevant time also maintained an administrative office in Jacksonville, Florida. Roka is registered to do business in Florida and has a designated agent for service of process in Florida. Roka has not maintained any office or facility in New York and, should this matter not be promptly

terminated, reserves its right to object to the locale hearing requested by the Claimant which is in New York, N.Y.

2. Roka has from time to time ordered and received goods shipped through Florida to its manufacturing facility in Honduras from the Claimant, Warshow & Sons, Inc. ("Warshow"). A dispute has arisen between Roka and Warshow involving alleged payments due from Roka for certain goods shipped by Warshow (the "Dispute").

3. Roka and Warshow have been engaged in efforts to mutually resolve the Dispute for several months. At no time during these efforts did Warshow ever claim to have the right to arbitrate the Dispute, nor did it ever inform Roka that it believed such a right existed. Roka was therefore shocked to receive the demand for arbitration, particularly since it has never entered into any agreement with Warshow consenting to arbitrate this Dispute with the AAA. Nor has Roka ever entered any agreement with Warshow whatsoever evidencing an intent to arbitrate this Dispute or any other matter involving Warshow in New York, N.Y.

4. It is hornbook law that there must be a valid written agreement to arbitrate a dispute before a matter can be properly submitted to, and determined by, an arbitral body. The AAA's Commercial Rules, specifically, R-7, entitled "Jurisdiction" recognize this fundamental premise. R-7 provides in relevant part that: "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." While this provision appears to conflict with the law in many jurisdictions, including Florida, which maintains that it is the trial court which has the jurisdiction to determine the existence of a valid written agreement to arbitrate or the existence of an arbitrable issue, Roka believes that

the AAA's jurisdiction over this demand for arbitration is so wholly unsupported, that it should be dismissed forthwith, leaving the parties to their judicial or other remedies to resolve this Dispute.

5. The only document on which Warshow predicates its demand to arbitrate this Dispute does not support the AAA's exercise of jurisdiction over Roka. All that Warshow has provided with its demand for arbitration is one side of an unidentified pre-printed form which contains boilerplate arbitration language. Moreover, Warshow's name is affixed to this page of the unidentified pre-printed form with a stamp. Warshow's name is not incorporated anywhere in the printed language of the form. Nor is there any reference whatsoever to Roka. A copy of this unidentified document is attached here as Exhibit A.

6. Simply put, in the absence of a written agreement to arbitrate, the Dispute between Warshow and Roka may not be determined in this or any other arbitral forum.

7. Under these circumstances, Roka respectfully submits that this body is clearly without jurisdiction to hear or determine the Dispute and should quash Warshow's demand for arbitration and dismiss it forthwith.

By: _____

BARBARA SLOTT PEGG

Florida Bar No. 275352
New York Bar No. 2140468
316 Sea Moss Lane, Suite 3
Ponte Vedra Beach, Florida 32082
Telephone No. (904) 285-8100
Facsimile No. (904) 285-8890

ATTORNEY FOR ROKA APPAREL PRODUCTS, LLC

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Peter B. Foster, Foster & Wolkind, P.C., 80 Fifth Avenue, Suite 1401, New York, N.Y. 10011 and to American Arbitration Association, Lisa M. Bellegarde, Case Manager by facsimile to 212/691-2459 on April 20, 2007.

_Barbara Slott Pegg_

# EXHIBIT F

AMERICAN ARBITRATION ASSOCIATION
--------------------------------------x
In the Matter of the Arbitration between
H. WARSHOW & SONS, INC.,

        Claimant,

- against -

ROKA APPAREL PRODUCTS, LLC.,

        Respondent.
--------------------------------------x

Arb. No. 13 181 00735 07

**AFFIDAVIT IN OPPOSITION TO MOTION TO QUASH**

STATE OF NEW YORK  )
         ) ss.:
COUNTY OF NEW YORK )

HENRY WARSHOW, being duly sworn, deposes and says:

1. I am the President and an employee of H. Warshow & Sons, Inc., the claimant in the above captioned matter, and in such capacity I have access to, and am one of the custodians of claimant's books, records and files, including the outstanding unpaid invoices which are subject of the within arbitration proceeding. The facts set forth in this affidavit are based upon both my personal knowledge, as well as my review and examination of claimant's books, records and files, including statements of account.

2. I am also over eighteen years of age, and I am fully familiar with all of the facts and proceedings heretofore had herein by reason of my personal involvement in the underlying events, and also by reason of my review of claimant's books, records and files, including the statements of account as aforesaid.

3. I make this affidavit in opposition to respondent's motion to quash claimant's demand for arbitration.

4. Respondents moving papers purport to make various arguments in order to avoid having the American Arbitration Association adjudicate the dispute which exists between the parties.

5. First, respondent seems to be implying that it has no presence in New York sufficient to subject itself to the jurisdiction of either the American Arbitration Association (hereinafter the "AAA") or the courts of the State of New York.

6. In support of this argument respondent advises the AAA that all of its manufacturing takes place in Honduras, that it has administrative offices in Florida, but that it has no offices in New York.

7. While these facts are interesting, respondent fails to mention the fact that it has been transacting business in New York State for years.

8. Specifically, upon information and belief, a substantial part of respondent's business consists of coming into New York State, meeting with vendors in New York State, placing orders in New York State, and buying textiles from vendors in New York State. Those textiles are in turn shipped to respondent's facility in Honduras where they are sewn and stitched into finished garments.

07/30/2007 14:58 9042858890   BARBARA SLOTT PEGG   #0487 P.036 /045
05/08/07 TUE 12:09 FAX 212 681 2459   FOSTER & WOLKIND P.C.   ☒003
May 04 07 04:05p   p.6

Case 1:07-cv-04611-LLS   Document 17-4   Filed 08/01/2007   Page 9 of 12

9. In addition, upon information and belief, a substantial part of respondent's business also consists of coming into New York State, meeting with its customers in New York State, selling finished garments to customers in New York State, and obtaining orders from customers in New York State.

10. Specifically, upon information and belief, respondent has:

   a) purchased textiles from the following New York companies:

      i) Milliken & Co. located at 1045 Sixth Avenue, New York, New York;

      ii) Darlington Fabrics Corporation located at 1407 Broadway, New York, New York; and

      iii) Elastic Fabrics of America, Inc. located at 1430 Broadway, New York, New York; and

   b) sold finished garments to the following New York companies:

      i) Maidenform located at 200 Madison Avenue, New York, New York, and ii) Warnaco located at 501 7 Avenue, New York, New York.

11. Even more important than the foregoing, many of the unpaid orders which are the subject of this arbitration were either initiated and/or placed by respondent

3

while its representative was physically present in New York visiting H. Warshow & Sons, Inc.'s New York office.

12. Specifically, respondent's President, Larry Stone, came to H. Warshow & Sons, Inc.'s New York office either to initiate or place orders on March 3, 2004, and again on April 6, 2004, and again on April 12, 2004, and again on November 2, 2004. and again on April 19, 2005.

13. In light of the foregoing, H. Warshow & Sons, Inc. respectfully submits that in addition to respondent repeatedly doing business within New York State in general, the transaction and underlying events which are the subject of this dispute also arose and took place in New York State.

14. Respondent's moving papers next argue that the dispute between the parties is not subject to arbitration because Roka alleges that it never consented to arbitration.

15. However, this argument by respondent simply not correct.

16. Respondent's moving papers conveniently fail to mention the fact that the page containing the arbitration provision which is the subject of this proceeding was a part of each and every order confirmation contract that was sent by H. Warshow & Sons, Inc. to respondent.

17. Specifically, the arbitration provision appears on the reverse side of every order confirmation contract that was sent by claimant to respondent over the years, including the 60+ unpaid order confirmation contracts which are the subject of this arbitration. An exemplar of this order confirmation contract form is annexed hereto as Exhibit "A" and made a part hereof.

18. These 60 + order confirmation contracts, as well as the underlying textiles which are the subject of those order confirmation contract, were all received by respondent without objection, without any comment, and without any controverting document being sent back to H. Warshow & Sons, Inc.

19. It should be noted that in May of 2006 H. Warshow & Sons, Inc.'s insurance carrier was negotiating with respondent's attorneys to resolve the dispute between the parties. At that time, respondent acknowledged an indebtedness to H. Warshow & Sons, Inc. in the sum of $232,583.93, and respondent's attorneys apparently offered to "waive the arbitration clause" and negotiate a settlement directly between the parties. See the letter dated May 12, 2006 from the H. Warshow & Sons, Inc.'s insurance carrier annexed hereto as Exhibit "B" and made a part hereof. Also see the fax from respondent to H. Warshow & Sons, Inc. dated July 25, 2006 acknowledging an indebtedness to H. Warshow & Sons, Inc. in the sum of $232,583.93, which is annexed hereto as Exhibit "C" and made a part hereof.

20. H. Warshow & Sons, Inc. respectfully submits that in light of i) the 60 + order confirmation contracts containing an arbitration clause sent to respondent and received

5

by respondent without objection, ii) respondent's apparent acknowledgment of the existence of the arbitration provision as evidenced by May 12, 2006 letter annexed hereto as Exhibit "B", and iii) the fact that arbitration is the customary method of settling disputes between merchants in the textile industry your deponent respectfully submits that respondent's position that it was unaware of the arbitration provision and taken by surprise by the commencement of the within proceeding is both untenable and incredible. Accordingly, the AAA should determine that respondent agreed to submit the within dispute for determination by the AAA.

WHEREFORE, it is respectfully requested that, and such other and further relief which this Court deems just and proper.

_____
HENRY WARSHOW

Sworn to before me this
4 day of May, 2007

_____

ANTHONY CARDILLO
Notary Public, State of New York
No. 034560234
Qualified in Bronx County
Commission Expires May 27, 2010

6